Thank you. United States Securities and Exchange versus iCube Domains at Ave. Good morning. May it please the Court, my name is David Deitch. I represent the relief defendants who are appellants in this case. We are here because the District Court illegally froze tens of millions of dollars of relief defendant assets that are not even alleged to be the proceeds of fraud by the defendant, Iftikhar Ahmed. The Court's error is that it concluded that relief defendant Shalini Ahmed, a 40-year-old Harvard MBA and former Goldman Sachs analyst, was merely a nominee for all of the relief defendant's assets. Well, I'm not sure of that. I mean, there are different assets here, and the government's theory is different as to different ones. Why don't you start in on the asset that you think you've got the strongest argument on and we'll keep going. Your Honor, that's exactly where I was going to go. In the briefs, the parties addressed three assets, but there are numerous relief defendant assets totaling some more than $10 million, perhaps more. As to which the SEC presented no evidence whatsoever to establish. Are you saying there are some that you did not challenge, but that they're part of this picture? I mean, on precisely that point, I was wondering, for me, the Iftikhar A. Ahmed Family Trust, $5,321,000. Specifically with respect to that trust, what is your position? Because I don't, did you raise any, what did you raise in the district court with respect to that? When, where have you raised it before us? Just so that I can focus on one thing and then you can move to others. Your Honor, that's an excellent example. That is one of the assets as to which no evidence was presented specifically to show that Mr. Ahmed exercised domination or control over the asset. In the district. The problem is commingling, though, too. So, I'm trying to figure out what asset it is you're talking about now. Well, right now we're talking about a family trust as to which I don't believe that there is a commingling, any assertion of commingling. Is this a point that you've briefed? In the district court, the answer is yes. In the, to answer your question, in the district court, we specifically put the SEC to its burden of proof to show that the defendant was an equitable owner or that the relief defendants. Of all of the assets. They're suiting this specific one? I mean. Yes. Or it was just all of them and this is one of them. We, we did not specifically, I don't know that we ever specifically addressed them one asset at a time, but we took the position that it was. In terms of intermingling, it's, how can you not treat them separately? Well, there's no asset as to commingling other than certain of the accounts, such as joint bank accounts. There are numerous assets that are held by the relief defendants as to which there is no, no allegation of commingling or any similar issue. And as to which the SEC took the position that the relief defendants were mere nominees, but did not even attempt to present evidence to satisfy its burden of proof on that issue. If they were relief. If you could come back to where in the brief you talk about the trust so that I know what, what argument you made there. In our, in our briefs before this Court. Yes. In our, in our, in our reply brief, Your Honor, we responded to the fact that the SEC had focused only on three assets in their brief. And we noted that in our post-hearing briefs before the district court, we had specifically referenced the fact that the SEC had a burden of proof as to all assets. And I only know what errors you've briefed. And so I'm asking you, where did you say that quite apart from the apartment and the salary and the commingle bank accounts and all that, there's a problem with the trusts? Where is that in the brief? So that I understand what, what you're faulting the district court for. Your Honor, I can, I can find the page number if you'd like. When you come up on rebuttal, you tell us what that is. Let me, let me, let me ask you, because I have page three of your reply brief, and it refers in a bullet point to a family trust holding more than $5 million. That, that is the family trust that Your Honor referenced. Is there any, did you bring it up in the, what, what, what we know technically as the blue group in the balance brief? Did you mention that particular trust or was it more of an all-in kind of a thing? I believe that we addressed it as a general matter that the SEC had the burden of proof as to each individual asset. The SEC responded in its brief simply with the three assets that were the subject of testimony and other evidence that were presented during the hearing. When you come up on rebuttal, you'll tell us where it is, because we don't entertain arguments raised for the first time in reply briefs as a rule. But you've got a whole bunch of other assets that you did brief. So why don't you tell us where the district court went wrong on those? Well, Your Honor, respectfully, we raised the issue in our, in our opening brief that the SEC had the burden of proof as to all assets that were held by the relief defendants. And that it's squarely addressed even if we did not denominate specific, specific assets. Tell us what the error is. I mean, we've got a Park Avenue apartment. Now, the argument of the SEC is that with respect to the park and the district court's findings are that this was, if the car is money, channeled through the various entities that are identified by the district court, that the relief defendants contributed nothing to it. And that's why that piece of property is subject to the freeze order. You want to tell us what's, where the error is there? I can certainly address the three specific assets that the Court would like, which is what I understand you to be asking. Because I assume you want us to lift this freeze. And if your argument is, look, it's defective as to all of them, you're going to have to show me that. Well, Your Honor, our position is that under this Court's, under this Court's decision in SEC v. Kavanaugh, the relief defendants' liability is limited to the proceeds of fraud in the hands of the relief defendants. They're not liable. The question is whether these assets can be frozen in order to make sure that they are available against iftikhar. Correct. And, and how they say that happens with the two Park Avenue apartments is that they trace the money to his fraudulent dealings. Now, if you don't think the evidence is sufficient on that, I need to hear why. Well, Your Honor, there are two separate issues here. One is the question of whether proceeds of fraud are traced to particular assets in the hands of the relief defendants. The second issue is whether the relief defendants are treated as nominees, which would allow, which would allow a freeze of assets beyond the amount of the proceeds of fraud. So that's why the existence of all of these other assets is important and is significant, because the amount frozen went far beyond the $36 million in proceeds that the SEC alleges that the relief defendants hold. And you're not disputing the Park Avenue apartments. You want us to turn to the other assets. Well, we, we do dispute it. I think we've presented it in our briefs, the evidence that we believe was presented to the district court. But I, I believe that the court could, could reach a finding in this, in this case on appeal based on the failure of the district court and the failure of the SEC to take on each individual asset and its relationship to the defendant. I hope you understand that when I've gone back and forth for now six or seven minutes on an asset, and you have no response particularized to what the problem was with the district court's findings, I, I'm going to assume that your argument is flawed. Now, I'm trying to give you the opportunity to deal with this, but you want to deal in a generality and not particularize what the error is here. Your Honor, I'm, I'm happy to address that specifically. In the case of the two seconds left, that's how you've chosen to use the time. Your Honor, I was responding to some of the inquiries, and I apologize if I did not respond to yours. The, the issue is that Ms. Ahmed specifically testified during the hearing on the basis that she was diagnosed with cancer at about the time that the transfers of assets occurred, and that they transferred assets into various holdings that were controlled by her or by the minor children in order to, to accomplish estate planning goals as advised by their estate counsel. So this is not a case in which a, a defendant has placed assets into the hands of a person to act as a, as a sham nominee simply to hide assets. What difference does that make? I mean, if they, I don't understand what difference it makes. Maybe he had a laudable motive for, for transferring the assets to the relief defendants, but there's still assets that he transferred to the relief defendants. The point, Your Honor, is that the jurisdiction of a relief defendant is limited to the proceeds of fraud. There are many assets that were transferred to these relief defendants that are not even alleged to be at proceeds of fraud, and the SEC can only The relief defendants didn't give anything for them. They're all subject to, to being frozen. His assets are subject to being frozen. Your Honor, the assets in the hands of the relief defendants can only be viewed as Mr. Ahmed's assets if they are treated as nominees. Right. And that gets us to, are they, is the source of the, his ill-gotten gains? And do they have a legitimate claim to the funds? And, you know, just because their estate planning has fraudulently obtained proceeds doesn't mean that they, they can't be frozen. But no evidence was presented, Your Honor, as to many, many other assets that they, that they constituted the proceeds of fraud. I want to identify which those are and which they, you want to treat it all as one, and I don't think you can do that. Well, Your Honor, I'm very happy. We're looking at the I-cubed transaction, we look at the Park Avenue, we've looked at the Goldman Sachs, those were all specifically briefed, and I haven't heard you in your time up here identify any defect with the findings of the district court as to those assets. Your Honor, I had begun to address it, and I can continue. Ms. Ahmed testified as well, in addition to testifying about the estate planning purposes for the transfers of those specific assets, she testified about her own, involvement in decision-making about the transactions in those assets. That stands in stark contrast, for example, to the decision in the McGinn case, which came to this Court on appeal. How is the fact that you manage ill-gotten gains conduct that allows you to shield them from being frozen? They still may be frozen, Your Honor, if they constitute proceeds of fraud. But to the extent that an asset also includes other funds that are not proceeds of fraud, if the relief defendant is not deemed a nominee, the freeze should not reach those additional assets. When you say that they're not proceeds of fraud, I'm not sure what you mean by that. I mean, if the principal defendant, the mister in the case, he secured a very large number of assets by fraud. Now, he transferred a lot of money to the relief defendants. Now, why aren't those things to be considered by the Court, at least potentially, proceeds of fraud for freeze purposes? Well, the SEC alleges in their amended complaint approximately $36 million in proceeds of fraud that were transferred to the relief defendants. Mr. Ahmed also made, and there's evidence of this in the record, tens of millions of dollars as to which there is no allegation of fraud. So there are many assets that were transferred from Mr. Ahmed beyond the $36 million that were transferred to the relief defendants that do not constitute, that the SEC doesn't even allege constitute proceeds of fraud. But if all of his assets are subject to being frozen, that's under the law. If they are his assets, the fact that he's transferred them to somebody doesn't absolve them from being frozen. I respectfully disagree, Your Honor. If unless — Tell me what case you're relying on for that principle. There are a number of cases, Your Honor. One of them is the McGinn case, which came to this as Smith, which I believe Your Honor sat on the panel, in which assets were transferred from the main defendant to his wife, and the Court went through the different assets separately to determine what the relationship was between the defendant and the asset. So, for example, there was a stock account in the wife's name, and she had provided stacks of blank authorization forms. And there was other evidence that showed that the defendant, the husband — That doesn't speak at all to legitimate gains by the target of the investigation. We've kept you well past your time. Go ahead. I just want to come back to that one trust, because that, to me, comes closest to your argument, and that's this $5,321,000 trust in which one could argue that there has not yet been proof that that was either ill-gotten gains or owned by Mr. Ahmed. But my question then is, where did you specifically raise that? And your answer, as far as I know, has been in a bullet point in the reply brief. Well, it was an entire section of our reply brief that was emphasizing something we had said more generally in our opening brief, which was that the SEC had the burden, if it wished to go beyond the $36 million of proceeds of fraud, it had the burden to show that each relief defendant was a nominee as to the particular assets that are to be frozen. So there are a number of assets such as the Family Trust, the TD Ameritrade account, the contents of safe deposit boxes as to which no evidence was taken by the district court, and you simply cannot have a blanket decision that all relief defendants are all nominees as to all assets. Any defendant has a liability for penalties going far beyond his liability for restitution of illegally gotten gains and interest. And the relief defendants received large numbers of assets from the main defendant. The district court made it available to your clients to identify any assets that were retained separately, that were separately earned and separately maintained from assets received by the defendant. And the district court on that basis excluded your client, the wife's Goldman Sachs stock and another Goldman Sachs earnings retirement plan or something like that, was excluded because you persuaded the district court that those were separately earned assets that had been maintained in a separate place so that they could be identified as hers and not sourced from the principal defendant. But other than that, it seems to me that all the other assets, so far as I can see, were sourced in the original defendant and are, and he would be liable for them. That may be true to a limited extent, except for two things. One is that the case has to be, has to be considered in the specific factual context of a relationship between a husband and wife in which Ms. Ahmed testified about the way in which they both participated in decision-making about all of the transactions in these assets. The other is that. That helps you. It seems to me it helps the government. Well, it helps your honor because even if I accept the suggestion that you've made in your question, the premise, the SEC is still limited to $36 million of proceeds of fraud that should be frozen in the hands of relief defendants because relief defendants must be treated differently than defendants who are accused of wrongdoing. That is a fundamental principle that the relief, the jurisdiction of the relief defendants is limited to the proceeds of the fraud that the SEC is seeking to disgorge from their possession. Is he correct in that last statement that the law establishes that the relief defendants, their liability and their vulnerability to freeze is limited to the proceeds of the fraud? No, your honor. We, we, we don't believe that the case law stands, but I think certainly the Kavanaugh case does limit the relief defendants liability at the end of the day, following a trial and a judgment, depending on whether the two part standard has been met. But there, but so far as we know, there is no decision from this court that limits the authority of a district court's freeze authority specifically to assets that have been fully traced at that preliminary injunction stage. I think the argument is a little different. It's that the dollar amount frozen shouldn't be more than the liability potential. And in some ways, you know, it makes certain, it has a certain appeal. Why do you need more frozen than you could recover? Understood, your honor. And I think that goes to the particular facts of this case. In this case, the liability of the principal defendant goes far beyond when you include penalties, the potential liability of the principal defendant goes far beyond what has been frozen in the hands of the relief defendant. Isn't that correct? Well, I would say, your honor, that we haven't identified everything that's been frozen necessarily in the hands of the relief defendants, and we haven't identified ownership with respect to each of those individual assets. You can't, you can't freeze $500 million in the hands of relief defendants because the principal defendant can be liable for $100 million. That's correct. And that's why I was, I was going to make the point that the facts of this case are important in the sense that the defendant and the relief defendants live together as a single household over a period of several years. And during those years, any legitimate income that they earned was dwarfed by the $65 million that Mr. Ahmed stole. Under the, under those facts, it's very difficult at the outset of a case, after a one month of expedited discovery, to sort through all of the assets of the household, assets that may very well have been shared jointly, may have been owned jointly, and to establish individual ownership with respect to each asset in that household. With the freeze of $118 million in this case is it prevents the relief defendants from spending household assets in which Mr. Ahmed may very well have an interest, an ownership interest that is, but that has not been established conclusively yet, but which would entitle the Court and the Commission to collect against those assets with respect to Mr. Ahmed's interest in order to satisfy his liability not only for disgorgement, but also for a civil penalty. You acknowledge that, that you are not entitled to freeze in the hands of the relief defendants assets that go beyond the potential liability of the principal defendant? We concede that if there were, if there were assets that were established as being owned solely by the relief defendants, then yes, the limit would be $65 million. Sorry. That's not my question. Yes. My question is, if, what is the amount, what is the potential amount of the principal defendant's liability, including ill-gotten gains, interest on them and penalties? The total amount for the principal defendant is $118 million. One hundred and what? 18. Okay. 118. So do you acknowledge that you may not freeze in the hands of the relief defendants assets going beyond $118 million? Absolutely. $118 million is the maximum of what you can freeze in either of the aggregating anything that you've frozen of the principal defendant against the relief defendants? Yes. Absolutely, Your Honor. So in addition, you acknowledge that anything that the relief defendants can show they obtained separately from the principal defendant and have maintained separately so that there was no commingling, that there is, has to be exempted from the freeze? That's correct, Your Honor. And that's exactly what happened with respect to Ms. Goldman's, pardon me, Ms. Ahmed's Goldman stock and her retirement account with Goldman. She established that those retired to her prior employment that were legitimately earned, they were held separately and we consented to their release. In terms of the remainder of the assets, we simply asked the relief defendants to come forward and identify whatever assets they believed should be exempt from the  And in a brief, the relief defendants focused on this trust that held the proceeds of the IQ transaction, as well as the two Park Avenue condominiums. And that's why our proof. Is the burden of proof on you or on the relief defendants? The burden of proof. So supposing the circumstances are that the relief defendants have a large amount of money. Um, now, um, uh, do you have to show that they got money from the principal defendant in order to be able to seize their assets or do they have to come and show, do they have to prove that these assets didn't come from the principal defendant? Your Honor, that burden always remains on the commission, on the government. In these cases, what I'm talking about is identifying assets that they're claiming ownership of, because at the outset of the case, the commission is moving in. We're moving very quickly, had a month of expedited discovery. We don't know exactly what might be in the household, what their entirety, their holdings might be. We don't know what the ownership of them might be. I would say this is more a question of asking them to identify the assets that they want to have excluded from the freeze. Once they've identified what they want excluded, the burden is absolutely on the commission to identify the assets that they want to have excluded from the freeze. And that's what happened here. The relief defendants only identified. Can you cause the court to freeze assets beyond money that the relief defendants got from the principal defendant? Well, at this point, Your Honor, we're not sure exactly what more they might have gotten from the principal defendant. They live together as a single household and it's, it's to be expected that of course they would be sharing assets freely among each other. There's nothing necessarily nefarious about it, but it does mean that Mr. Ahmed may very well have an ownership interest in all of those assets within the Ahmed household. I understand you just starting discovery, but won't there come a time at which you will have to take a position on how much he put into those accounts over the years and even accepting your commingled argument, if to use easy numbers, he put $1 million into an account and the account now has $1.7 million, you're only going to be able to freeze a million, right? At some point, Your Honor, that's, that does sound accurate. Now it may be, it may be that we don't know where the other $700,000 came from. Correct. The argument is he put $1 million of fraudulent proceeds in here and the account has more than that in it. That, you can only, you can only freeze the part that is attributable to his misconduct. If those funds can be easily segregated and identified, I mean, they can be identified as coming from him versus from other sources, then yes, that's the most we're entitled to under the Kavanaugh standard at the end of the day. I think you're wanting it both ways here. I mean, you said that the burden of proof is on you, the burden of proof is on you to justify the freeze, apart from the ultimate liability. Yes. Why don't you need to show, I mean, can you freeze all of her assets merely because she's his wife without showing that she got anything from him? And the answer to that is no. Why can you freeze anything more than you demonstrate came from him? Yes, Your Honor. Because we are operating at such a preliminary stage in the case. That's, that is why. Because we're at the preliminary injunction stage. Because it's an early stage, you're, you're absolved from the burden of proof and merely by virtue of the fact that she's his wife, you get to freeze her assets? We're saying that we get to freeze the household assets, Your Honor, yes, because we believe that we've, we've established that the relief defendants received at least $36 million from Mr. Ahmed. And there's no reason to believe that the other family household assets didn't come in part from him. We see. Well, the CFTC, of course, gives you some, some support for this. Yes. About the household assets. But, I mean, for, for how long? I mean, at some point, don't you have to make a good faith effort to, to identify at least the dollar amount that the person contributed to that? Yes. At some point, we will. Absolutely, Your Honor. But the defendants, the, pardon, the relief defendants have not gone back to the district court to seek modification of the asset freeze based on what, what has been found. We saw Ms. Ahmed's submitted her own declaration a couple months after the preliminary injunction hearing. Discovery is still continuing. We expect it to wrap up in January. The relief defendants are always welcome to return to the district court and ask for a narrowing of the freeze based on the record at that date. Is it your position, is it your position that, that your burden of proof is satisfied by the inference you, you have shown that he was in a big earning position, raking in big money, whether it was by fraud or legitimately. And she was in a position to prove anything that she has contributed herself independently of him to her assets. And if, to the extent that she has assets that go beyond anything that she can show that she contributed, the inference is supported that it must have come from his huge earnings. That it either came from his earnings or it was commingled with his earnings among the household assets. Yes. Our, our position is that unless she identifies something that she claims is her own, that inference applies. Of course, if she identifies an asset. So far she's only, the only thing that she has claimed to have contributed to her assets was stuff that she earned at Goldman Sachs. Correct. Which, part of which has been excluded and part of it is represented to be a, a, a one and a quarter million or something like that. Yes, Your Honor. And that depends on the, the, the freeze of that depends on whether it was commingled. Yes, yes. The freeze of that depends on commingling and I would also like to emphasize, Your Honors, that any inequity, possible inequity here is remedied in large part by the generous carve-outs that relief defendants enjoy. They are receiving. I don't think you've addressed this and that is in terms of the amount of the freeze. Yes. What you can freeze. Isn't there a difference between penalties as, as opposed to discouragement? I mean, isn't there a difference in the standard that you use when it's penalties and the standards you use when it's a discouragement and, and interest? Yes, Your Honor. We, we do agree that there's a difference. Normally the penalty would correspond to the assets of the, of a defendant because a relief defendant would not be liable for a penalty at the end of the day. So there is a difference in standards there. But what is the difference? Can you explain what it is? What is the standard? Let's say, what is the, what is the standard with respect to the relief defendant's liability, both ultimately and for freeze, with respect to penalty as opposed to disgorgement plus interest? Yes. With respect to a penalty, the penalty is personal to the defendant at the end of the case and it's to be satisfied out of the defendant's assets. I'm sure you'd have to satisfy the nominee standard, not just the Kavanaugh standard. Correct. With respect to disgorgement, we would have to satisfy the Kavanaugh standard at the end of the day in order to establish liability. With respect to the freeze, we obviously have to show that the relief defendants received some ill-gotten gains from the defendant in order to support a freeze over them. This Court's decision in Miller from last year establishes that much, that in order to simplify then the, when you're talking about disgorgement, you're going after the money. When you're going, we're talking about a penalty, you're going after the defendant. Correct. I'm not sure I understand that. First of all, well, two things. I'd like to know what the source is for, what the legal source is for that proposition. But it doesn't seem to me to make much sense because let's say the defendant, the principal defendant has stolen $50 million and as a result of the $50 million is liable for penalties in addition of let's say $40 million. So it's totally $90. Yes. In total it's $90. Can the government be frustrated in its effort to collect the $40 million penalty by the principal defendant, by your ability to recover $50 million from one source or another and then the principal defendant simply transfers $40 million to his wife and leaves himself without assets or in India and otherwise unavailable? Are you saying that the government has no right if the principal defendant pays the $50 million or you recover the $50 million, he transfers the $40 million to his wife, so she's a relief defendant, she's not a nominee, he has no control over that $40 million except to the extent that he can persuade his wife to spend it in his interest. You can't get that money, you're saying? That would depend on the facts of the case. It might be that we could go after the amount that was transferred under a fraudulent transfer theory depending on the facts and circumstances of the case. But normally speaking, to collect on a penalty, we go after the defendant, not the defendant's relatives. If you can't get anything from the defendant because he's fled or has emptied him, drained himself of assets by transferring to his wife and children, that's the end of the line for you unless they're nominees? Unless they're nominees, unless there's some way that we can identify his equitable ownership of assets that are nominally held by family members or unless we can show some fraudulent transfer. Those would be two of the most common theories at the end of the day. By fraudulent, you mean if it was transferred to his wife for the purpose of avoiding paying the penalty? Exactly. Thank you very much. Thank you. Your Honor, I took the opportunity to look back at our brief and we actually addressed the issue in several different places. On pages 3 and 10 of the brief, we talk about the factual, the evidentiary basis or lack of it during the briefing and in the hearing on the assets other than the three assets, the two apartments and the one account. And on page 25 of our brief. You don't identify the problem with the evidentiary showing on the trusts, right? Well, it's hard to be specific, Your Honor, because the evidentiary problem was that there was no evidence presented at all. No one addressed it and the SEC did nothing to carry its burden of proof, which is the argument we set forth on page 25 of our opening brief. Well, you know, I'm looking at page 10 and I know I'm looking at it quickly, but do I even see the word trusts referenced in there? No, we did not. We did not list. How am I supposed to know that I have to now look in the record for what evidence they adduced with respect to the trusts? Well, Your Honor, with all due respect, the approach you're taking puts us in a somewhat untenable position to prove a negative. No, it does say to me, for instance, on these trusts, there is no evidence and you point to whatever in the record discusses the trusts. I have no idea how I am supposed to have gathered from this brief that after I looked at the iCube transactions, the Goldman salary, the Park Avenue apartments, I should have looked at the record with respect to the trusts and seen whether there was evidence. Your Honor, in our briefs, we referenced Mr. Oerker's declaration, which was the method by which the SEC brought to the court's, the district court's attention, what assets had been transferred and what assets had been frozen. And by referencing back to that, there is a long list of other assets as to which no evidence whatsoever was presented or mentioned or alluded to by the SEC during their presentation. And it's the... I have an argument for this on forfeiture of the issue to us, but that's another matter. Anything else you'd like to say in rebuttal? I now understand where you think this is in your blue brief. Thank you, Your Honor. Your Honors, I think the way that you must... I have a question. Is it your contention, and if you would specify, please, that the assets frozen in the hands of your clients exceed in dollar amount the amounts that your clients received from the principal defendant? I don't know whether in the record it is clear that they exceed what... And exceed what the liability of the principal defendant would be for disgorgement of improper gains plus interest. In other words, if they go into penalty amount going beyond disgorgement plus interest. If we use the full $65 million figure, which is the full amount of disgorgement the SEC faces, that is more, that is a greater value than the total value of currently frozen relief defendant assets. But if you use the figure of $36 million, which is the figure the SEC uses of the amount it alleges was transferred out of the fraudulent proceeds to the relief defendants, there is a substantial excess. In other words, there are more relief defendant assets. What does the 36 represent? The SEC in its amended complaint sets forth three figures of fraudulent proceeds that were transferred to the relief defendants. That total 36, and I can specify those for you if you'd like. Could you give me one second? And this all appears in Mr. Oerker's declaration as well, which is... That's in the complaint. If you acknowledge that your clients, the relief defendants, got more than $36 million from the principal defendant and that the principal defendant's liability for disgorgement exceeds the amount that has been frozen, I don't see how it helps you. Because, Your Honor, unless they are deemed as nominees, the relief defendants own these assets. They own all of these assets, other than the... Nominees comes into play if only with respect to the penalty amount exceeding the recovery for disgorgement of ill-gotten gains plus interest. That's correct. In other words, but there are relief defendant assets in excess of that amount. That gets complicated, too, because some of it is appreciated value, right? Some of it, yes. So, for instance, on the apartments, the relief defendants, as I understand the record, never contributed anything, but the apartments are worth more than the money that they trace to your client as the purchase, to Mr. Iftikhar, rather, as the purchaser. So it's appreciation that accounts for the difference between what he put in and what the asset is worth. Well, the relief defendants contributed services, which there was testimony about, but yes, the money is alleged by the SEC to have come from fraudulent proceeds. That pertains to some of the assets, other assets, too. We've got appreciation is what contributes to the difference between what he put in and what's now frozen. But to return to Judge Sack's example, the family trust, in which there is $5 million, there was no evidence presented by the SEC to satisfy its burden of proof, either that those were proceeds of fraud or that the relief defendants were mere nominees, such that those are the defendants' assets. And that's really the point here. All they need to show is amounts of money that your clients got from the principal defendant. They don't have to show that the particular money in a particular asset or in a particular box came from the relief defendant, as long as there's an umbrella that shows that that amount of money is encompassed, that that box, what's in that box, is encompassed by money that was given to your clients by the main defendant and is within his liability for disgorgement. Your Honor, I think that's at odds with this Court's rulings on the jurisdiction over relief defendants, which, unless they are nominees, is limited to the amount of fraudulent proceeds. Well, either ill-gotten gains are owned by Mr. Huffman, right? Yes. Are you prepared, if this were to go back to the district court, are you prepared to make a showing that it was neither ill-gotten gains nor owned by Mr. Huffman? Well, we might be, Your Honor, but it remains the SEC's burden of proof. And the SEC has acknowledged that. And the SEC failed to present any evidence. And I find it hard to imagine a circumstance in an issue of constitutional dimension where someone is being deprived of their assets where a party does not satisfy its burden of proof and is not forced to comply with it. What I'm stumbling over is, assuming that to be absolutely right, I'm surprised not to see that statement about that big chunk of property in your brief. Well, the problem, Your Honor, is there are a lot of big chunks of property. That's only one of them. And there are many others as to which there was no evidence. And perhaps it was our mistake in the approach we took in the brief. We assumed that the Court could approach the issue by simply saying, all of the other assets that are listed in the record, particularly in Mr. Oerker's declaration, as to which the SEC failed to present any evidence, the district court's ruling that the relief defendants were nominees as to those assets was error because it does not comply with the law on the SEC's burden of proof as to that issue. Thank you. Thank you. All right. We're going to take the case under advisement. Thank you to counsel.